# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

**CUYLER BURK, P.C.**
Parsippany Corporate Center
Four Century Drive
Parsippany, New Jersey 07054-4663
(973) 734-3200
Attorneys for Defendant, The Prudential Insurance Company of America

| | |
|---|---|
| AIJAZ KHAN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br>　　　　　　　Defendant. | CIVIL ACTION NO.  2:08-cv-2292 |

## THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

OF COUNSEL:

Jo Ann Burk, Esq.
Eric J. Konecke, Esq.

ON THE BRIEF:
Jo Ann Burk, Esq.
Eric J. Konecke, Esq.

**CUYLER BURK, P.C.**
Parsippany Corporate Center
Four Century Drive
Parsippany, New Jersey 7054
(973) 734-3200

Attorneys for Defendant,
The Prudential Insurance
Company of America

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ ii

**PRELIMINARY STATEMENT** ................................................................................. 1

**RESPONSE TO PLAINTIFF'S STATEMENT OF**
**UNDISPUTED MATERIAL FACTS** ........................................................................ 4

**ARGUMENT** ............................................................................................................... 6

**POINT ONE** ................................................................................................................ 6

   **PRUDENTIAL'S INTERPRETATION OF THE GROUP POLICY AND**
   **CLAIM DECISION WAS NOT ARBITRARY AND CAPRICOUS** .................... 6

**POINT TWO** ............................................................................................................. 14

   **THE DISCRETIONARY CLAUSE IN THE PLAN IS NOT VOID AS A**
   **MATTER OF NEW JERSEY PUBLIC POLICY OR REGULATION,**
   **AND THUS, THE ARBITRARY AND CAPRICOUS STANDARD MUST**
   **BE APPLIED** ......................................................................................................... 14

**POINT THREE** ......................................................................................................... 22

   **EVEN IF A DE NOVO REVIEW IS APPLIED, PLAINTIFF'S CLAIM**
   **MUST STILL FAIL** .............................................................................................. 22

**CONCLUSION** .......................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Barber v. UNUM Life Ins. Co. of Am.*,
   383 F.3d 134 (3d Cir. 2004)................................................................................. 18

*Evans v. Employee Benefit Plan*,
   311 Fed. Appx. 556 (2009) ........................................................................... 15, 16

*Fahringer v. Paul Revere Ins. Co.*,
   317 F.Supp.2d 504 (D.N.J. 2003) ........................................................................ 9

*Firestone Rubber & Tire Co. v. Bruch*,
   489 U.S. 101 (1989)........................................................................ 6, 19, 20, 21

*Hancock v. Metropolitan Life Ins. Co.*,
   2008 WL 2996723 (D.Utah Aug. 1, 2008). ........................................................ 19

*In re Failure by Dept. of Banking*,
   336 N.J. Super. 253 (App. Div. 2001) ................................................................ 15

*Kentucky Ass'n of Health Plans v. Miller*,
   538 U.S. 329 (2003)...................................................................................... 17, 18

*Lasser v. Reliance Standard Life Ins. Co.*,
   344 F.3d 381 (3d Cir. 2003), *cert. den.* 541 U.S. 1063 (2004)................................. 9

*Luby v. Teamsters Health, Welfare and Pension Trust Funds*,
   944 F.2d 1176 (3d Cir. 1991)............................................................................. 22

*Lucero v. Hartford Life and Accident Ins. Co.*,
   2009 WL 2170048 (D.Utah July 17, 2009) .................................................... 19, 20

*Martin v. Allianz Life Ins. Co.*,
   573 N.W.2d 823 (N.D. 1998) ........................................................................ 11, 13

*McElroy v. Smithkline Beecham Health & Welfare Benefits Trust Plan*,
   340 F.3d 139 (3d Cir.2003)................................................................................. 9

*Metropolitan Life Insurance Co. v. Glenn*,
   128 S. Ct. 2343 (2008)..................................................................................... 6, 7

*Mixon v. Metropolitan Life Ins.*,
    442 F.Supp.2d 903 (2006) .................................................................................... 16

*Rahway Hospital v. Horizon Blue Cross Blue Shield*,
    374 N.J. Super. 101 (App. Div. 2005) .................................................................. 15

*Sarlo v. Broadspire Services, Inc.*,
    439 F.Supp. 2d 345 (D.N.J. 2006) ......................................................................... 15

*Schwing v. The Lily Health Plan*,
    562 F.3d 522 (3d Cir. 2009).................................................................................... 7

*Union Labor Life Ins. Co. v. Pireno*,
    458 U.S. 119, 128 n. 7 (1982) ............................................................................... 18

*Weeks v. UNUM Group*,
    585 F.Supp.2d 1305 (D.Utah 2008)........................................................ 18, 20, 21

*Wise v. Quest Communications Intern, Inc.*,
    2009 WL 2477269 *4 (D.Utah Aug. 12, 2009) .................................................... 19

**Statutes**

29 U.S.C. § 1144(a) .......................................................................................................... 17

29 U.S.C. § 1144(b)(2)(A)............................................................................................ 17, 18

*N.J.A.C.* § 11:4-58.................................................................................................. 14, 15, 17

*N.J.A.C.* § 11:4-58.3............................................................................................... 14, 15, 16

*N.J.A.C.* § 11:4-58.4...................................................................................................... 14

**Rules**

Rule 590-218................................................................................................................ 18, 19

**Treatises**

2 LIFE & HEALTH INSURANCE LAW § 16:2 (2d. ed. September 2009) ........................... 11

44 AM. JUR. INSURANCE § 1459 (2nd ed. May 2009) ................................................... 11

## PRELIMINARY STATEMENT

This matter involves a denied claim for Dismemberment benefits under an employee welfare benefit plan governed by ERISA and underwritten by The Prudential Insurance Company of America ("Prudential") under a Group Policy issued to Plaintiff Aijaz Khan's employer, JP Morgan Chase & Company.  The Plan grants Prudential, as claim administrator of the Plan, discretionary authority to interpret the provisions of the Group Policy and determine eligibility for benefits.  Pursuant to long-standing Supreme Court precedent, the Court's review of Prudential's denial of benefits is subject to the arbitrary and capricious standard of review based upon its review of the administrative record.  As such, the parties have filed cross-motions for summary judgment.

In 2006, Plaintiff lost the tip of his left thumb and a portion of his left index finger in a table saw accident and applied for Dismemberment benefits under the subject Group Policy.  The Group Policy clearly provides that in order to recover benefits, Plaintiff must have severed both the left index finger and his left thumb at the point at which they attach to the hand.  As Plaintiff did not sever both his left index finger and his left thumb at the point at which they attach to the hand, Prudential denied Plaintiff's claim for Dismemberment benefits.

Plaintiff does not dispute that he did not physically severe both his left index finger and left thumb at the point at which they attach to the hand.  Rather, Plaintiff asserts that Plaintiff lost the functional use of his left index finger and thumb.  Plaintiff contends that the Group Policy's use of the term "severance" is ambiguous in that it could mean either actual physical severance or functional loss of use and that the Group Policy should be construed against Prudential to cover Plaintiff's functional loss of use.

1

The Group Policy's use of the term "severance" was not ambiguous as its plain meaning in this context is to physically separate the fingers from the hand.  Nevertheless, the Third Circuit has held that in applying the deferential arbitrary and capricious standard of review, even ambiguous terms are not construed against the Group Policy's drafter.  Rather, the Court reviews the claim administrator's interpretation to determine if it was reasonable.  In this matter, Prudential's interpretation was reasonable in that it applied the policy as clearly written and as applied by the majority of the courts that have decided the issue.

Plaintiff also asserts that the discretion granted to Prudential by the Plan is void by a New Jersey regulation banning some discretionary clauses in policies issued or delivered in New Jersey, and therefore, that the Court should apply a *de novo* standard of review.  Even if the New Jersey regulation was applicable to the subject Group Policy which is governed by Delaware law, the regulation, which prospectively took effect in January 2008, does not apply to the Group Policy issued in 2006.

In addition, the regulation prohibits insurance policies from containing such discretionary clauses.  The discretionary clause in this case is not found in the Group Policy, but rather, the Summary Plan Description prepared by the employer and governed by federal law.  Moreover, the discretionary clause in the subject Plan does not violate the regulation as the Plan provides, as the regulation permits, Prudential's discretionary decision to be reviewed by a court of law.  Nevertheless, the New Jersey regulation is preempted by ERISA.

Regardless, Prudential's claim determination, even under a *de novo* review, was in accordance with the plain language of the Group Policy.  As stated, the Group Policy required Plaintiff to have severed both his left index finger and left thumb at the point at which they attach to the hand.  Plaintiff did not sever his thumb at all and severed a portion of his left index finger.

2

Accordingly, Prudential's decision must be upheld under either an arbitrary and capricious or *de novo* standard of review.

## RESPONSE TO PLAINTIFF'S STATEMENT OF
## UNDISPUTED MATERIAL FACTS

Prudential, in its motion for summary judgment filed on October 8, 2009, submitted a Statement of Undisputed Material Facts. Prudential refers the Court to its Statement of Material Facts. For the sake of clarity, Prudential also sets forth below its specific responses to Plaintiff's Statement of asserted Material Facts, and to the extent disputed by Prudential, a specific citation to the Administrative Record.

1-4. Prudential admits only that it has an office located at 751 Broad Street, Newark, New Jersey 07102 and that JP Morgan Chase & Company maintained an employee welfare benefit plan with the plan name "Employee Term Life, Employee and Dependent Accidental Death and Dismemberment and Dependents Term Life Coverage for All Full-Time or Part-Time Salaried Employees of JP Morgan Chase Bank, N.A. or one of its subsidiaries" (the Plan") and that the Plan provides, among other things, Optional Accidental Death and Dismemberment Coverage, in addition to non-contributory employee term life insurance, for eligible employees of JP Morgan Chase & Company, including Plaintiff, under Group Policy Number GW-22454 underwritten by Prudential ("Group Policy"). See Prudential's Statement of Undisputed Material Facts ("PSOMF") at ¶¶ 4, 6.

5. Misleading. Prudential admits only that the Optional Accidental Death and Dismemberment Coverage was optional, "contributory" as defined by the Group Policy, and that the document Bate numbered PRU 12 to PRU 13 indicates that Plaintiff contributed payment for such optional coverage by way of after tax payroll deductions.

6. Prudential admits only that the Plan provides, among other things, Optional Accidental Death and Dismemberment Coverage for eligible employees of JP Morgan Chase &

4

Company, including Plaintiff, under the Group Policy underwritten by Prudential.  PSOMF ¶¶ 4, 6.

      7.     Admitted.

      8.     Prudential admits only that the Optional Accidental Death and Dismemberment Coverage was optional and that Plaintiff contributed payment for such optional coverage.

      9.     Prudential denies that the cited evidence indicates that Plaintiff was a resident of the State of New Jersey.  Prudential admits only that the cited documents list Plaintiff's address as 85 Warwick Road, West Windsor, New Jersey on October 12, 2006, May 29, 2006 and April 9, 2007.

      10.     Prudential denies that it admitted that Plaintiff suffered a loss of his index finger under the terms of the Group Policy.  Prudential admits that it denied Plaintiff's claim by letter dated October 12, 2006 and upheld its decision by letters dated April 9, 2007 and July 24, 2007, and that the content of said October 12, 2006, April 9, 2007 and July 24, 2007 letters speak for themselves.  PSOMF ¶¶ 16, 20-21, 26-27.

      11.     Prudential denies the statement except to admit only that the August 16, 2006 SOAP note indicates that the amount of Dismemberment coverage for loss of thumb and finger of the same hand under the Group Policy for Plaintiff's claim is $275,500.

      12.     Prudential admits that Parvaiz Malik, M.D. submitted a May 8, 2007 report to Prudential, the content of which speaks for itself.  PSOMF ¶¶ 22-25.  Prudential denies that Dr. Malik's report was "uncontroverted."  See PSOMF ¶¶ 12-27.

      13.     Denied.  See PSOMF ¶¶ 11-15, 18, 26.

## ARGUMENT

## POINT ONE

## PRUDENTIAL'S INTERPRETATION OF THE GROUP POLICY AND CLAIM DECISION WAS NOT ARBITRARY AND CAPRICOUS

Plaintiff asserts that he suffered a physical amputation of his left index finger, partial physical amputation of his left thumb and functional loss of his left index finger and thumb. Plaintiff asserts that Prudential's denial of his Dismemberment claim was arbitrary and capricious because Prudential should have interpreted the Group Policy to cover partial physical amputations and functional losses.

As set forth in Prudential's summary judgment brief, the Court in *Firestone Rubber & Tire Co. v. Bruch*, 489 U.S. 101, 115 (1989) held that where, as in this case, Prudential has exercised a grant of discretionary authority to determine benefit claims, a court is mandated to review the denial under an "arbitrary and capricious" standard of review.  As also set forth in Prudential's summary judgment brief, the arbitrary and capricious standard is a highly deferential standard of review and the Court must uphold Prudential's interpretation of the Group Policy and claim decision as long as there was a reasonable basis for Prudential's interpretation and claim decision.

Plaintiff asserts that the Group Policy was ambiguous and that Prudential's interpretation of the policy language was "tilted by [its] conflict of interest" in being both the administrator and payor of claims submitted under the Group Policy.  With respect to the conflict of interest, the Court has held that where the claim administrator, such as Prudential in this case, both decides claims under the policy and pays claims under the policy, this purported conflict of interest should be considered as one of many factors in determining whether Prudential's decision was arbitrary and capricious.  *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008).

The Court in *Glenn* did not hold that a conflict of interest alone mandates a reversal of claim administrator's decision or alters the standard of review, but rather, that the conflict is just one of many factors the court should consider when determining whether the claim administrator's decision was arbitrary and capricious. *Id.* at 2350-2352. *See also Schwing v. The Lily Health Plan*, 562 F.3d 522 (3d Cir. 2009) (holding that following *Glenn* "courts reviewing the decisions of ERISA plan administrators or fiduciaries . . . should apply a deferential abuse of discretion standard of review . . . and consider any conflict of interest as one of several factors in considering whether the administrator or fiduciary abused its discretion").

Plaintiff has not alleged any factors, other than a conflict of interest, that indicate Prudential's interpretation of the Group Policy was arbitrary and capricious.  Moreover, Prudential has indicated that it maintains a system designed to ensure accurate claim assessments, including "a training program for claims associates handling Accidental Death & Dismemberment claims under the Group Policy; a Quality Control program; a compensation structure where compensation is not based upon the number of claims that are paid or denied and where no claims associate or medical associate or consultant is ever compensated based upon reserve savings; and an updated Claims Manual."  See Prudential's Supplemental Answer to Plaintiff's Interrogatory Number 15, attached as Exhibit H to the Certification of Edward M. Colligan in support of Plaintiff's Motion for Summary Judgment ("Colligan Cert.").  *See Glenn, supra*, 128 S.Ct. at 2351 (holding that the conflict of interest factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy").

In this case, Prudential's decision was supported by the plain language of the Group Policy and the medical documentation submitted by Plaintiff.  "Loss" is defined as, among other

things, the person's "loss of thumb **and** index finger of the same hand by severance at or above the point at which they are attached to the hand." PSOMF ¶ 7.  The plain language of the Group Policy unambiguously states that both the thumb and finger must be severed from the hand and that they must be severed at or above the point at which they attach to the hand.

The medical records submitted by Plaintiff, including the color photographs submitted by Plaintiff in support of his subject motion, clearly indicate that Plaintiff amputated his left index finger at the proximal interphalangeal level, lacerated the distal phalax and flexor tendon of his left thumb and lost part of his left thumb's fingertip bone. PSOMF ¶¶ 11-25. Dr. Malik, Plaintiff's treating physician, never asserted that Plaintiff severed his left index finger and left thumb at or above the point at which they attach to the hand.

Prudential determined, as the medical records clearly indicate, that **neither** the index finger nor the thumb of the left hand were severed at the point at which they attach to the hand. Prudential determined that the loss of Plaintiff's left index finger occurred at the proximal interphalangeal level, which is not where the finger attaches to the hand. PSOMF ¶ 16. Plaintiff's left thumb was not severed at all.  Plaintiff suffered lacerations and lost the tip of his thumb.

 Since neither finger was severed at the requisite point and the policy required that both be severed, there was no "loss" as defined by the policy.  Accordingly, Prudential correctly applied the clear terms of the Group Policy and denied Plaintiff's claim because Plaintiff did not suffer a loss of his left index finger and left thumb as required under the clear terms of the Group Policy.  As such, Prudential's decision was not arbitrary and capricious.

Plaintiff asserts that the Group Policy is ambiguous and should be construed against Prudential.  Plaintiff asserts that Prudential should have interpreted the Group Policy to also

cover a loss of Plaintiff's left index finger and left thumb even if they were not severed at or above the point at which they attach to the hand and to cover a functional loss of use of Plaintiff's left index finger and left thumb without actual severance.  Plaintiff's purported interpretation of the Group Policy does not require interpretation of any ambiguous terms, but rather, requires a complete rewriting of the Group Policy.

Plaintiff's assertion that ambiguous policy terms should be construed against Prudential is incorrect.  The Court, in applying the arbitrary and capricious standard of review, does not construe even ambiguous policy terms against the insurer.  In *Fahringer v. Paul Revere Ins. Co.*, 317 F.Supp.2d 504 (D.N.J. 2003), the court held that even ambiguous policy language will not be construed against a claims administrator granted discretionary authority to interpret the terms of an ERISA benefit plan.  The court held:

> Although traditional insurance contract interpretation rules in New Jersey require that ambiguous terms must be construed against the insurer, interpretation of ERISA benefits plans that give the plan administrator discretionary authority to construe the terms of the plan does not follow the principle of *contra proferentem*.  Instead, a plan administrator's interpretation of plan terms must be reviewed under the arbitrary and capricious standard to determine whether the administrator's interpretation was reasonable.

*See also McElroy v. Smithkline Beecham Health & Welfare Benefits Trust Plan*, 340 F.3d 139, 142 (3d Cir.2003) (holding that when a plan's language is ambiguous, the plan administrator is authorized to interpret it, and a court "must defer to this interpretation unless it is arbitrary or capricious"); *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381 (3d Cir. 2003), *cert. den.* 541 U.S. 1063 (2004) (holding that claim administrator's interpretation of ambiguous provision in ERISA Plan is entitled to deference and will be upheld unless it is unreasonable).

Nevertheless, Plaintiff has not shown any ambiguity in the Group Policy.  First, Plaintiff asserts that the term "loss" in the policy as used in paragraph 6 must be considered in light of

paragraphs 2, 3 and 4, which require a loss of sight, speech or hearing to be a "total and permanent loss."  Plaintiff argues that Paragraph 6, in contrast, is silent and does not require that the loss of thumb or index finger be total or permanent.  Based upon this reading, Plaintiff asserts that the policy does not require an actual, permanent and total amputation of the thumb and index finger and that a functional loss of the thumb and index finger should be covered.

Plaintiff is comparing apples and oranges.  The Group Policy does define when a loss of sight, speech and hearing are covered losses and require that they be total and permanent.  Moreover, the Group Policy does provide when a dismemberment is a covered loss.  It provides that a loss of a hand or foot is covered when it is severed at or above the wrist or ankle.  It also provides that a loss of thumb and index finger of the same hand are covered when they are both severed at or above the point at which they are attached to the hand.

Losses of the senses (sight, hearing and speech) are covered when they are total and permanent, as opposed to partial loss of speech, hearing or sight or temporary loss of speech, hearing or sight.  The policy did not provide that the loss of a thumb and index finger be permanent because the loss of a thumb or index finger cannot be temporary.  The policy did not provide that the loss of a thumb and index finger be total, but rather, specifically defined that they must be severed at a specific anatomical place, *to wit,* where they attach to the hand.

Second, Plaintiff asserts that the Group Policy's use of the term severance is ambiguous and that the Group Policy could be interpreted to cover partial severance or functional, as opposed to physical losses, of the left index finger and thumb.  Plaintiff, in support of this argument, cites to a handful of cases that have held that the use of the term "severance" in certain accidental death and dismemberment policies is ambiguous and should be construed against the

drafter to cover functional loss of use of the hands or fingers.  The majority rule, however, is to the contrary.  See 44 AM. JUR. INSURANCE § 1459 (2nd ed. May 2009) stating:

> Under policies insuring against loss by severance of a member, or even of an entire member, where the policies do not designate any specific anatomical place at which the severance must take place, some courts have held that a severance resulting in the physical loss of the entire member is not required and have allowed recovery predicated upon the destruction of the usefulness of the member where there has been a severance resulting in the physical loss of part of the member.  **However, where the language of the policy refers to severance at a designated place, for example, the loss of a foot by severance at or above the ankle, most courts have held that such language is unambiguous and requires severance of the member at the place designated in the policy.**

*Id.* (emphasis added).  See also 2 LIFE & HEALTH INSURANCE LAW § 16:2 (2d. ed. September 2009) ("Where the policy specifically covers only loss of a member by severance at a designated anatomical place, for example, loss of a foot by severance at or above the ankle, most courts have held such a provision unambiguous and have denied recovery, in the absence of such severance, for loss of usefulness or for partial severance.").

The court's analysis in *Martin v. Allianz Life Ins. Co*., 573 N.W.2d 823 (N.D. 1998) most succinctly sets forth the majority rule that the use of the term "severance" is not ambiguous.  In *Martin*, Plaintiff was involved in a motor vehicle accident in which he suffered a severe fracture dislocation of his lower left leg.  *Id.* at 824.  Plaintiff's lower left leg was eventually amputated 196 days after the accident.  *Id.*

Plaintiff applied for coverage under his Accidental Death and Dismemberment Insurance Policy.  *Id.*  The insurer denied coverage because the severance of Plaintiff's left leg was not amputated within the 90 day period required by the policy.  *Id.* at 825.  The policy provided benefits for covered losses that occurred within 90 days after the injury was sustained.  *Id.* at

824.  Covered loss included loss of a limb, which the policy defined as "severance at or above the wrist or ankle."  *Id.*

The trial court found that Plaintiff's leg was not physically separated above the ankle until long after the 90 day limitation period expired.  *Id.* at 825.  On appeal, Plaintiff asserted that the meaning of the word "severance" was ambiguous because it could mean physical severance or functional severance and should be interpreted to provide coverage because Plaintiff's leg was functionally severed following the accident.  *Id.*

The North Dakota Supreme Court held that Plaintiff "jumped the gun" by suggesting an ambiguity exists without first looking at the plain meaning of the term "severance."  *Id.* at 825-826.  The court noted that "[n]either physical nor functional appears in the contract" and that the court cannot "add words to the contract to create an ambiguity because such words do not define, but rather modify, the true contract term, 'severance,'" *Id.* at 826.  The court held that "[a]dding words to a contract in order to create an ambiguity violates the purpose of contract interpretation."  *Id.* (citation omitted).

The court looked at the clear, ordinary meaning of the undefined term "severance" in order to determine if there existed any ambiguity.  *Id.*  The court noted the dictionary definition of "severance" as:

> "The act or process of severing . . . [t[he condition of being severed . . . [s]eparation; partition.  "Sever" means "[t]o set or keep apart; divide or separate . . . [t]o cut off (a part) from a whole . . . ."

*Id.* (quoting The American Heritage College Dictionary 1248 (3d ed. 1997).

The court determined that the term "severance means what it says; that is, where a member is separated or taken apart from the rest of the body."  *Id.*  Accordingly, the court held

that "'functional severance' or immobility of [Plaintiff's] leg following the collision is not within the plain meaning of severance and does not invoke . . . the dismemberment coverage."  *Id.*

The court also noted that the policy was entitled "Accidental Death and Dismemberment Insurance" and that "[t]o conclude that the definition of severance is somehow broader than the main dismemberment title would turn the typical insurance contract on its head."  The court noted that the initial portions of an insurance policy describe the broad terms of the coverage with the specific limitations appearing later in the policy.  *Id.* at 827.  The court held that the policy should be construed as a whole and that a Death and Dismemberment insurance title describes a policy providing coverage in case the insured dies or loses a member of his body.  *Id.*

As aptly stated by the court in *Martin*, the plain and ordinary meaning of the term "severance" requires a physical separation of a member from the body.  Plaintiff attempts to add the words functional and physical to modify the plain and ordinary meaning of the term severance to create an ambiguity.  As stated by the court in *Martin*, adding words to a contract to create an ambiguity violates the principles of contract interpretation.  Moreover, the subject policy in this case, as in *Martin*, provides for Dismemberment coverage.  Construing the policy as a whole and looking at the plain and ordinary meaning of the term severance, clearly indicates that the policy only provides coverage for physical severance and not functional losses.

In sum, the Policy's use of the term "severance" was not ambiguous.  Even if the term "severance" could be construed to cover partial amputations or functional losses, ambiguous terms in this context are not construed against Prudential.  Rather, under the arbitrary and capricious standard of review, the administrator is authorized to interpret ambiguous policy language, and a court must defer to this interpretation unless it is arbitrary or capricious.

Prudential's interpretation of the Group Policy in this case to require the physical loss of both Plaintiff's index finger and thumb at or above the point at which they attach to the hand was consistent with the majority of the courts that have decided this issue.  As such, Prudential's interpretation of the Group Policy and determination in this case cannot be considered arbitrary and capricious.


## POINT TWO

### THE DISCRETIONARY CLAUSE IN THE PLAN IS NOT VOID AS A MATTER OF NEW JERSEY PUBLIC POLICY OR REGULATION, AND THUS, THE ARBITRARY AND CAPRICOUS STANDARD MUST BE APPLIED

Plaintiff asserts that the administrator's grant in the Plan to Prudential, as claim administrator, to exercise discretionary authority to interpret the provisions of the Group Policy and make claim decisions is prohibited by *N.J.A.C.* § 11:4-58, and therefore, that the Court should review Prudential's claim decision in this case under a *de novo* review.  *N.J.A.C.* § 11:4-58.3 provides:

> No individual or group health insurance policy or contract, individual or group life insurance policy or contract, individual or group long-term care insurance policy or contract, or annuity contract, delivered or issued for delivery in this State may contain a provision purporting to reserve sole discretion to the carrier to interpret the terms of the policy or contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State. A carrier may include a provision stating that the carrier has the discretion to make an initial interpretation as to the terms of the policy or contract, but that such interpretation can be reversed by an internal utilization review organization, a court of law, arbitrator or administrative agency having jurisdiction.

First, the prohibition of *N.J.A.C.* § 11:4-58.3 is only applicable as of January 1, 2008. *See N.J.A.C.* § 11:4-58.3; *N.J.A.C.* § 11:4-58.4.  The regulation expressly provides that it shall be prospectively applied.  *See In re Failure by Dept. of Banking*, 336 N.J. Super. 253 (App. Div.

2001) (as a general principle, statutes, rules and regulations are applied prospectively); *Rahway Hospital v. Horizon Blue Cross Blue Shield*, 374 N.J. Super. 101 (App. Div.), *certif.. den.* 183 N.J. 217 (2005) ("a regulation may apply retroactively if the Legislature or agency has expressed that intent, either explicitly or impliedly, and retroactive application would not cause a manifest injustice or an interference with a vested right.").

The subject Group Policy was effective January 1, 2006. See Prudential's Supplemental Interrogatory Answer Number 16, attached as Exhibit C to Colligan Cert. Moreover, the subject accident took place in May 28, 2006 and Prudential's last denial of Plaintiff's claim on appeal was by letter dated July 24, 2007. Accordingly, *N.J.A.C.* 11:4-58.3 is not applicable to the Plan provision in this case. *See Evans v. Employee Benefit Plan*, 311 Fed. Appx. 556, 560 (2009) (holding that *N.J.A.C.* § 11:4-58 did not take effect until January 2008, and thus, was not applicable to disability income policy issued prior to January 2008).

Second, Plaintiff has not established that the subject Group Policy was delivered and issued in the State of New Jersey or that the New Jersey regulation is otherwise applicable. The Policy was issued by Prudential to Plaintiff's employer, JP Morgan Chase Bank, N.A., located in New York, New York. See Certification of Eric J. Konecke submitted in support of Prudential's Motion for Summary Judgment ("Konecke Cert."), Ex. B. at PRU 145. Moreover, the subject Group Policy provides that it is governed by Delaware law. *Id.* *See Sarlo v. Broadspire Services, Inc.*, 439 F.Supp. 2d 345 (D.N.J. 2006) (rejecting Plaintiff's argument that asserted regulations by the New Jersey Department of Banking and Insurance voided the Group Policy's discretionary clause because, *inter alia*, the Group Insurance Certificate specifically states that it is governed by the laws of Delaware, and thus, "there was a significant question not addressed by [Plaintiff] whether New Jersey law is even the applicable law on this issue").

Third, the regulation governs insurance carriers and prohibits a group health insurance policy delivered or issued for delivery in New Jersey from containing a provision reserving sole discretion to the carrier to interpret the terms of the policy or contract.  In this matter, the plan sponsor, JP Morgan Chase Bank, N.A., issued the Summary Plan Description that grants Prudential, the Claim Administrator, discretion to interpret the terms of the Group Contact and decide claims.  The Summary Plan Description specifically states that it was prepared by JP Morgan, and that it was not part of the Group Contract.  See Konecke Cert., Ex. B at PRU 219-225.  Accordingly, the regulation does not apply to the discretionary provision included by the plan sponsor in the Summary Plan Description.  *See Mixon v. Metropolitan Life Ins.*, 442 F.Supp.2d 903, 907-908 (2006) (holding that California Department of Insurance's opinion letter that discretionary clauses violate the California Insurance Code was not applicable to discretionary clause contained in Summary Plan Description as Department of Insurance only has jurisdiction over insurance policy forms and Summary Plan Descriptions are governed by federal law).

Fourth, the regulation does not prohibit all discretionary clauses.  It permits "a provision stating that the carrier has the discretion to make an initial interpretation as to the terms of the policy or contract, but that such interpretation can be reversed by an internal utilization review organization, a court of law, arbitrator or administrative agency having jurisdiction."  *N.J.A.C.* § 11:4-58.3.  The subject Plan in effect prior to the regulation's effective date comports with its purpose.  The Plan provides that Prudential has the discretion to interpret the terms, conditions and provisions of the Group Policy but also expressly provides for the review of a claim denial under an arbitrary and capricious standard.  Moreover, the Plan expressly advises participants of their right under ERISA to file a suit in court if the claim is denied.  *See Evans, supra*, 311

Fed.Appx. at 560 (holding that policy was not void pursuant to regulation as policy did not reserve sole discretion to carrier).

The Plan at issue in *Evans*, like the Plan at issue in this case, provided that the Plan Administrator shall have discretionary authority to interpret the Plan's terms and to determine eligibility for and entitlement to Plan benefits in accordance with the Plan's terms.  It also provided that any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect unless it could be shown that the interpretation or determination was arbitrary and capricious.  It also advised participants of their rights under ERISA, including the right to file suit in court if a claim for benefits was denied.  The Court held that the Plan did not violate *N.J.A.C.* § 11:4-58 because it did not reserve sole discretion to the carrier.

Even if *N.J.A.C.* § 11:4-58 did apply, it is preempted by ERISA. 29 U.S.C. § 1144(a) provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter related to any employee benefit plan."  ERISA's savings clause states that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A).

The United States Supreme Court in *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003) established a two part test to determine express preemption under 29 U.S.C. § 1144(a), *to wit*, (1) the state law must "be specifically directed toward entities engaged in insurance;" and (2) the state law must "substantially affect the risk pooling arrangement between the insurer and the insured."  *Id.* at 342.  *See also Barber v. UNUM Life Ins. Co. of Am.*, 383 F.3d

134, 143 (3d Cir. 2004).   The subject New Jersey regulation is directed towards insurance companies.   The regulation, however, does not "substantially affect the risk pooling arrangement" between Prudential and Plaintiff's employer.

The Third Circuit has held that the transfer of risk relevant to the *Miller* test must affect the substantive terms relating to the risk borne by the insurer.   The Court in *Miller* held:

> Within the insurance industry, "risk" means the risk of occurrence of injury or loss for which the insurer contractually agrees to compensate the insured. With risk pooling, "a number of risks are accepted, some of which involve losses," and the "losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it."

*Barber, supra,* 383 F.3d at 143 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 128 n. 7 (1982)).   The subject New Jersey regulation pertains to the standard of review, which only comes into play in the event of a dispute over a claim determination.   The standard of review does not affect the assessment of the risk insured against, *to wit*, Dismemberment benefits. Accordingly, the subject regulation does not affect the substantive terms relating to the risk borne by Prudential, and thus, is not saved from preemption by 29 U.S.C. § 1144(b)(2)(A).

In *Weeks v. UNUM Group*, 585 F.Supp.2d 1305 (D.Utah 2008), the plaintiff argued that a *de novo* review should be applied as the Plan's discretionary clause, which granted the administrator discretionary authority to determine an employee's eligibility for benefits under a group long term disability policy and to construe the terms of the policy, violated Rule 590-218 of Utah's Administrative Code.   *Id.* at 1307-1308.   Similar to the subject New Jersey regulation, Utah's Rule prohibited discretionary clauses unless the policy also provided that the claimant had the right to seek judicial review of the administrator's determinations.   *Id.* at 1308.

The court noted that the Rule did not ban all reservation clauses, but rather, required that a discretionary clause include, among other things, language that explains the discretion, its

extent and its implications.  *Id.* at 1311.  The court noted that since the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989), which recognized that insurers could design ERISA plans to grant discretion to a plan fiduciary, benefit plans have included language providing for discretionary authority.  *Id.*

The court held that the Rule had no substantial effect on the risk pooling arrangement between insurers and insured because "most plans already account for the reservation of discretionary authority, and such authority's effect on judicial review, when they create and enter into insurance agreements."  *Id.* at 1312.  The court held that the Rule does not "change the bargain between the insurer and insured."  *Id.*

In *Lucero v. Hartford Life and Accident Ins. Co.*, 2009 WL 2170048 (D.Utah July 17, 2009), the court also recently concluded that Utah's Rule 590-218 was preempted by ERISA and did not fall within the savings clause as it did not substantially affect the risk pooling arrangement between insurers and the insured.  It held:

> Unlike state insurance mandates, which require insurers to assume risk (and consequently modify premiums) for particular adverse events, the Utah Rule applies only to the administrative function of interpreting the insurance plan's terms and judicial review of the use of that administrative function.  The Court, therefore, finds that the Utah Rule does not substantially affect the risk pooling agreement because it is unrelated to either the risk of adverse events occurring or their potential magnitude.

Id. at *6.  *See also Wise v. Quest Communications Intern, Inc.*, 2009 WL 2477269 *4 (D.Utah Aug. 12, 2009); *Hancock v. Metropolitan Life Ins. Co.*, 2008 WL 2996723 (D.Utah Aug. 1, 2008).

In this matter, the New Jersey regulation, like the Utah Rule, does not ban all discretionary clauses, but rather, permits the use of discretionary clauses granting the insurer

discretion as long as the decision may be reversed by a court of law, an administrative agency, arbitrator or internal utilization review organization.   As such, the regulation does not substantially affect the risk pooling agreement because, since *Firestone*, most policies contain discretionary clauses and such discretionary authority's affect on judicial review. *Weeks, supra,*, 585 F.Supp.2d at 1312.  The Plan at issue in this case contains such a discretionary clause and provides that the claimant may file a claim in a court of law in the event of an adverse claim decision.

Moreover, the New Jersey regulation applies only to the administrative function of interpreting the insurance plan's terms and review of the use of that administrative function. Accordingly, the New Jersey regulation "does not substantially affect the risk pooling agreement because it is unrelated to either the risk of adverse events occurring or their potential magnitude." *Lucero, supra*, 2009 WL 2170048 at *6.

The regulations at issue in the cases relied upon by Plaintiff, *American Council of Life Insurers v. Ross* and *Standard Insurance Co. v. Morrison*, are distinguishable from the New Jersey regulation.  *See Weeks, supra*, 585 F.Supp.2d at 1311 (noting that the Michigan law considered in *Ross* and the Montana law considered in *Morrison* were significantly different than the Utah Rule as the Utah Rule did not constitute an all-out-ban on reservation of discretion clauses).

In *American Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009) and *Standard Insurance Co. v. Morrison*, 537 F.Supp.2d 1142 (D. Mont. 2008) the courts held that the Michigan and Montana laws, which completely banned insurers from including discretionary clauses in their insurance policies, were not preempted by ERISA under the savings clause.  The courts found that Michigan's and Montana's laws, which prohibited insurers and insureds from

entering into contracts that include discretionary clauses, substantially affected the risk pooling agreement.  The courts held that such laws, "[b]y changing the terms of enforceable insurance contracts, . . 'alter[ed] the scope of permissible bargains between insurers and insureds.'"  *Ross*, *supra*, 558 F.3d. at 606 (quotations omitted).  *See also Morrison, supra*, 537 F.Supp.2d at 1152.

The New Jersey regulation, like the Utah Rule at issue in *Weeks*, does not completely ban the use of discretionary clauses, but rather, allows the use of discretionary clauses as long as the decision can be reviewed.  As noted by the court in *Weeks*, since *Firestone*, most insurance policies have already contained discretionary clauses that allow the administrator to exercise discretion which may be reviewed by a court of law and reversed.  Accordingly, the New Jersey regulation, unlike the Michigan or Montana laws, has not changed the terms of enforceable insurance contracts, and thus, does not substantially affect the risk pooling agreement between insurers and insureds.

## POINT THREE

## EVEN IF A DE NOVO REVIEW IS APPLIED, PLAINTIFF'S CLAIM MUST STILL FAIL

Even assuming that a *de novo* standard of review should be applied, Prudential's determination must still be upheld.  Unlike the arbitrary and capricious standard of review, determinations reviewed *de novo* are not afforded deference by the district court, and a court can substitute its judgment for that of the plan.

The Third Circuit has determined that a court exercising *de novo* review over an ERISA determination is not required to conduct a *de novo* evidentiary hearing or full trial *de novo* in making the determination.  Rather, if the record on review is sufficiently developed, the court may, in its discretion, merely conduct *de novo* review of the administrative record, making its own independent benefit determination.  *Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d 1176 (3d Cir. 1991).  The court in *Luby* admitted evidence outside the administrative record, finding that the evidence was crucial on *de novo* review, however, in that case, there was no evidentiary record at all for the court to review.  In the instant case, the administrative record is more than complete.  Therefore, it is not necessary for the Court to consider evidence outside the administrative record.

Even under a *de novo* review, Prudential's determination that Plaintiff did not suffer a Loss under the terms of the Group Policy was appropriate.  The Group Policy clearly provides that a loss in this instance requires severance of Plaintiff's left index finger and thumb at or above the point at which they attach to the hand.  The medical documentation submitted by Plaintiff clearly and indisputably indicated that Plaintiff did not sever his left index finger and thumb at or above the point at which they attach to the hand.  Accordingly, Prudential correctly determined that Plaintiff did not suffer a compensable loss under the terms of the Group Policy.

Plaintiff, conceding that Plaintiff did not sever his left index finger and thumb at or above the point at which they attach to the hand, asserts that the Group Policy is ambiguous.  Plaintiff asserts that the Group Policy is ambiguous as to whether it covers functional loss of use of Plaintiff's left index finger and thumb, and therefore, that the Group Policy should be construed against Prudential.  As set forth in detail *supra*, the plain and ordinary meaning of the term "severance" means a physical separation of the index finger and thumb at or above the point at which they attach to the hand, and thus, the Group Policy is not ambiguous as to whether it also covers functional loss of use.  As also stated *supra*, the majority of the courts have held that the term "severance" in this context is not ambiguous.

Accordingly, even if the Court were to apply a *de novo* standard of review, Prudential's determination was based upon the clear and unambiguous language of the Group Policy and must be upheld.

## <u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully submitted that Prudential's motion for summary judgment should be granted and Plaintiff's denied.

                                              **CUYLER BURK, P.C.**
                                              Attorneys for Defendant,
                                              The Prudential Insurance Company of
                                              America


Dated: November 6, 2009                       By:    _____*Jo Ann Burk*_____
                                                     Jo Ann Burk