**NOT FOR PUBLICATION**     **CASE CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AIJAZ KHAN,<br><br>        Plaintiff,<br><br>v.<br><br>PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br><br>        Defendant. | Civil Action No. 08-2292(SDW)<br><br><br><br><br>OPINION<br><br><br>March 31, 2010 |

**Wigenton, District Judge**

Before the Court are two motions: a Motion for Summary Judgment by Defendant Prudential Insurance Company of America ("Prudential") and a Cross-Motion for Summary Judgment by Plaintiff Aijaz Khan ("Mr. Khan"). Prudential's Motion seeks an order dismissing the Complaint with prejudice. Mr. Khan's Motion seeks an order requiring Prudential to pay him dismemberment benefits under an insurance policy. The Motions are decided without oral argument as permitted by Federal Rule of Civil Procedure 78.

**I.     Jurisdiction and Venue**

The Court has jurisdiction over this case based on 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

**II.    Factual Background**

On May 28, 2006, Mr. Khan was injured in a table saw accident at his home, suffering injuries to his left thumb and index finger. (Def. Statement of Material Facts

("SOMF") ¶ 2; Pl. Resp. to Def. SOMF ¶ 2.)[1] At the time of this injury, Mr. Khan was employed by J.P. Morgan Chase & Co. ("J.P. Morgan"). (Def. SOMF ¶ 3; Pl. Resp. to Def. SOMF ¶ 3.) J.P. Morgan maintained an employee welfare benefit plan: "Employee Term Life, Employee and Dependent Accidental Death and Dismemberment and Dependents Term Life Coverage for All full-time or part-time Salaried Employees of JP Morgan Chase Bank, N.A. or one of its subsidiaries" (the "Group Contract"). (Def. SOMF ¶ 4; Pl. Resp. to Def. SOMF ¶ 4.) Prudential is the underwriter and Claims Administrator of the Group Contract. (Colligan Certif. Ex. B 9-10; Konecke Certif. Ex. B PRU 221.)

The Group Contract makes available "Optional Accidental Death and Dismemberment Coverage" (the "Optional Coverage") for eligible employees of J.P. Morgan, including Mr. Khan. (Pl. SOMF ¶ 6; Def. Resp. to Pl. SOMF ¶ 6.)[2] The Optional Coverage, which is issued to J.P. Morgan, is identified as Group Policy G-2042. (Pl. SOMF ¶ 4; Konecke Certif. Ex. B PRU 177.) Mr. Khan elected and paid for the Optional Coverage. (Pl. Resp. to Def. SOMF ¶ 1; Def. Resp. to Pl. SOMF ¶ 5.)

The Optional Coverage requires that Prudential pay benefits when the insured suffers a "Loss" as defined by the Optional Coverage. (Konecke Certif. Ex. B PRU 195.) "Loss" is defined as the insured's:

> (1) loss of life.
> (2) total and permanent loss of sight.
> (3) total and permanent loss of speech.
> (4) total and permanent loss of hearing.

---

[1] Defendant's SOMF in Support of its Motion for Summary Judgment is docket entry no. 14-2. Plaintiff's Response to Defendant's SOMF is docket entry no. 17-1.

[2] Plaintiff's Brief in Support of his Motion for Summary Judgment, docket entry no. 15-1, contains Plaintiff's SOMF. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, docket entry no. 18, contains Defendant's Response to Plaintiff's SOMF.

> (5) loss of hand or foot by severance at or above the wrist or ankle.
> (6) loss of thumb and index finger of the same hand by severance at or above the point at which they are attached to the hand.
> (7) loss due to Quadriplegia, Paraplegia, Hemiplegia or Uniplegia.
> (8) loss due to Coma.

*Id.*

The Group Contract's Summary Plan Description, provided by J.P. Morgan, reserves to Prudential, as the Claims Administrator, "the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (Konecke Certif. Ex. B PRU 219-221.) It further provides that the "decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." (*Id.* at PRU 221.) Preceding the Summary Plan Description are the following words in large print on an otherwise blank page: "The Summary Plan Description is not part of the Group Insurance Certificate. It has been provided by your Employer and included in your Booklet-Certificate upon the Employer's request." (*Id.* at PRU 219.)

On May 28, 2006, the day of his injury, Mr. Khan was treated by Dr. Parvaiz Malik. (Konecke Certif. Ex. C PRU 9.) On July 19, 2006, Mr. Khan applied for dismemberment benefits under the Group Contract. (Konecke Certif. Ex. C PRU 5.) In support of his claim, Mr. Khan submitted a form completed by Dr. Malik in which the doctor stated that Mr. Khan had "accidentally amputated left index finger and part of left thumb." (Konecke Certif. Ex. C PRU 6.)

Dr. Malik's Operation Record states that Mr. Khan's preoperative diagnosis was "[t]raumatic amputation, left index finger, and complex injury, left thumb." (Konecke Certif. Ex. C PRU 9.) Dr. Malik performed a revision of the amputation of the left index

3

finger with reconstruction of the tip, and he repaired the flexor tendon and laceration of Mr. Khan's left thumb. (*Id.*) X-rays taken of Mr. Khan's left hand on the day of his injury revealed "[a]mputation left index finger at the level of the mid proximal phalanx" and "[s]oft tissue injury to thumb without underlying bony abnormality." (Konecke Certif. Ex. C PRU 65.)

By letter dated October 12, 2006, Prudential denied Mr. Khan's claim for dismemberment benefits. (Konecke Certif. Ex. C PRU 24.) Prudential's stated reason for the denial was that "[t]here is no indication that a loss of the thumb and index finger of the same hand by severance at or above the point at which they are attached to the hand. The loss of the index finger occurred at the proximal phalanx. The reports support that the thumb was not amputated." (*Id.* at PRU 26.)

By letters dated March 6, 2007 and March 27, 2007, Mr. Khan appealed Prudential's October 12, 2006 decision. (Konecke Certif. Ex. C PRU 42, 50.) Included with the first letter were two photographs of Mr. Khan's left hand. (*Id.* at PRU 46, 48.) The photographs show that Mr. Khan's left thumb, though partly amputated, is attached to his hand. (*Id.*) By letter dated April 9, 2007, Prudential denied Mr. Khan's appeal for the same reason that it initially denied his claim. (Konecke Certif. Ex. C PRU 119-22.) Prudential added that the Optional Coverage "does not cover the 'functional loss' of your fingers, only the actual physical loss is considered." (*Id.* at PRU 121.)

By letter dated June 27, 2007, Mr. Khan made a second appeal to Prudential. (Konecke Certif. Ex. C PRU 124.) In support of his appeal, Mr. Khan submitted a report by Dr. Malik dated May 8, 2007. (*Id.* at PRU 125-26.) This report was based on Dr. Malik's treatment of Mr. Khan from the day of the injury, May 28, 2006, through May 4,

2007. Dr. Malik stated that Mr. Khan's left thumb was half a centimeter shorter than his right thumb due to amputation. (*Id.* at PRU 126.) Dr. Malik diagnosed Mr. Khan with "[t]raumatic amputation of left index and thumb with severe loss of function of the left hand." (*Id.*)

By letter dated July 24, 2007, Prudential denied Mr. Khan's second appeal. (Konecke Certif. Ex. C PRU 131.) Prudential reiterated both that the medical reports do not support that Mr. Khan's left thumb was amputated and that functional loss of fingers is not covered under the Optional Coverage. (*Id.* at PRU 133.)

On March 24, 2008, Mr. Khan filed this action in the Superior Court of New Jersey seeking to recover dismemberment benefits under the Optional Coverage. On May 12, 2008, Prudential filed a Notice of Removal to this Court.

On October 8, 2009, Prudential filed a Motion for Summary Judgment seeking an order dismissing the Complaint with prejudice. Prudential asserts that Mr. Khan does not qualify for benefits under the Optional Coverage for the reasons given in their previous denials of Mr. Khan's claim. On October 9, 2009, Mr. Khan filed a Cross-Motion for Summary Judgment seeking an order requiring Prudential to pay him dismemberment benefits under the Optional Coverage.

### III.   Discussion

#### A. Standard of Review

A motion for summary judgment should be granted where it is shown "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 339-41 (3d Cir. 1990) (citing *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59

5

(3d Cir. 1988)). For a factual issue to be both material and genuine it must not only have the potential of affecting the outcome of the case but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

The Employee Retirement Income Security Act of 1974 ("ERISA") regulates employee "benefits in the event of sickness, accident, disability, death or unemployment"[3] when such benefits are provided by an "employer engaged in commerce or in any industry or activity affecting commerce"[4].

When the decision of an ERISA plan administrator is challenged in federal court, that decision is reviewed *de novo* unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A benefit plan that grants such discretionary authority may specify that a reviewing court may only overturn the decision of the administrator or fiduciary if that court finds that the decision was arbitrary or capricious because "[t]rust principles make a deferential standard of review appropriate." *Firestone*, 489 U.S. at 111 (citing RESTATEMENT (SECOND) OF TRUSTS § 187 (1959)). Under the arbitrary and capricious standard of review, a court "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Bowman Transp. Inc. v. Arkansas-Best Freight Syst. Inc.*, 419 U.S. 281, 285 (1974) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

---

[3] 29 U.S.C. § 1002(1)(A).
[4] 29 U.S.C. § 1003(a)(1).

6

Some Circuit Courts have determined that an employee benefit plan does not grant discretion to the claims administrator or limit judicial review to the arbitrary and capricious standard where only the Summary Plan Description—and not the insurance contract establishing the employee benefit plan itself—contains language to this effect. *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322-23 (4th Cir. 2008); *Schwartz v. Prudential Ins. Co. of Am.*, 450 F.3d 697, 699 (7th Cir. 2006); *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276 (11th Cir. 2003); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001). The *Shaw* Court reasoned that because the insurance contract explicitly stated that no change in such contract could be made except by particular procedures, the Summary Plan Description, which had not been agreed to by following those procedures, could not be an amendment to the insurance contract. *Shaw*, 353 F.3d at 1283-84. The same logic was employed in *Grosz-Salomon* and *Schwartz* by the Ninth Circuit and Seventh Circuit, respectively. 237 F.3d at 1161-62; 450 F.3d at 699.

The Third Circuit has not yet decided whether a Summary Plan Description can grant discretionary authority to a claims administrator absent similar language in the insurance contract. However, the Third Circuit has held that where a grant of discretionary authority in the Summary Plan Description conflicts with a grant of discretionary authority in the insurance contract itself, the grant in the insurance contract is controlling. *Nally v. Life Ins. Co. of N. Am.*, 299 F. App'x 125, 127-128 (3d Cir. 2008) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 488-90 (2d Cir. 2006)). This suggests that the Third Circuit would adopt the view taken by other Circuit Courts that an insurance contract also controls where it contains no grant of discretionary authority.

7

Where a *de novo* review is appropriate, a reviewing court may make its independent conclusion based on the administrative record and other evidence. *Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1185 (3d Cir. 1991) (citing *McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 431 (6th Cir. 1989)).

Here, the Summary Plan Description attached to Mr. Khan's copy of the Group Contract provides that:

> The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(Konecke Certif. Ex. B PRU 221.) The Group Contract specifies that "[n]o change in the Group Contract is valid unless shown in: (1) an endorsement on it signed by an officer of Prudential; or (2) an amendment to it signed by the Contract Holder and by an officer of Prudential." (*Id.* at PRU 152.) There is no evidence that an officer of Prudential signed or endorsed the Summary Plan Description. (*Id.* at PRU 220-224.) Thus, by the terms of the Group Contract, the Summary Plan Description does not amend the Group Contract. The page that precedes the Summary Plan Description states in large print: "The Summary Plan Description is not part of the Group Insurance Certificate. It has been provided by your Employer and included in your Booklet-Certificate upon the Employer's request." (*Id.* at PRU 219.) Prudential concedes that the "Summary Plan Description specifically states that it was prepared by JP Morgan, and that it was not part of the Group Contract." (Def. Opp'n. 16.) There is no provision in the Group Contract itself that gives Prudential, the Claims Administrator, sole discretion to interpret the

8

Group Contract. There is also no provision that establishes that any such discretion can only be overturned if it is exercised in an arbitrary or capricious manner. Thus, under *Firestone*, *de novo* review is appropriate because the Group Contract does not contain a grant of discretionary authority to Prudential. 489 U.S. at 115. The Court's conclusion is consistent with how the Fourth Circuit decided the case of *Woods v. Prudential*, where the supposed grant of discretion in the Summary Plan Description was identical to that in this case. 528 F.3d at 322-23. There too, the Court found that the insurance contract contained no grant of discretion and, as such, that Court reviewed Prudential's decision *de novo*. *Id.*

### B. Applicable Law

ERISA preempts most state regulation of employee benefits. 29 U.S.C. § 1144(a). State laws, including precedents of state courts, regulating insurance are explicitly saved from preemption by ERISA. 29 U.S.C. § 1144(b)(2)(A), (c)(1).

Here, the Group Contract states that it is governed by Delaware law. (Konecke Certif. Ex. B PRU 145-46.) Under Delaware law, when "the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning." *New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162, 1183 (3d Cir. 1991) (quoting *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982)). "[I]n assessing whether a contract's terms are ambiguous, [a Delaware] Court will rely on 'what a reasonable person in the position of the parties would have thought it meant.'" *Bayside Builders, Inc. v. Amoroso*, No. Civ. A. 01L-11-030, 2002 WL 31818509, at *3 (Del. Super. Nov. 13, 2002) (quoting *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insur. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).

Further, J.P. Morgan is "engaged in commerce or in [an] industry or activity affecting commerce." *See* 29 U.S.C. § 1003. The Optional Coverage provides a benefit to employees "in the event of . . . accident, disability, [or] death." *See* 29 U.S.C. § 1002(1)(A). Therefore, the Optional Coverage is governed by ERISA. That said, ERISA does not preempt any state law "which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). As such, the Court will apply those laws regulating insurance in Delaware to determine whether there are genuine issues of material fact as to whether Prudential must pay Mr. Khan's claim.

**C. Contract Interpretation**

Where an insurance contract requires "severance," courts have given the term its clear, ordinary meaning. *See Martin v. Allianz Life Ins. Co. of N. Am.*, 573 N.W.2d 823, 827 (N.D. 1998). "Severance" is "[t]he act or process of severing . . . [t]he condition of being severed . . . [s]eparation; partition" and "sever" means "[t]o set or keep apart; divide or separate . . . [t]o cut off (a part) from a whole." *Martin*, 573 N.W.2d at 827 (quoting *The American Heritage College Dictionary* 1248 (3d ed. 1997)). Thus, "where the language of the policy refers to severance at a designated place, for example, the loss of a foot by severance at or above the ankle, most courts have held that such language is unambiguous and requires severance of the member at the place designated in the policy." 44 AM. JUR. 2D *Insurance* § 1459 (citing *Jefferson v. Monumental Gen. Ins. Co.*, 577 So. 2d 1184 (La. Ct. App. 2d Cir. 1991)). Further, where this language of severance "at or above" a specified point is used, most courts have denied recovery where an insured has suffered only a loss of usefulness or partial severance, rather than a severance at the specified point. 2 WILLIAM F. MEYER & FRANKLIN L. BEST, LIFE & HEALTH

INSURANCE LAW § 16:2 (2d ed. 2009) (citing *Metzler v. Am. Cas. Co. of Reading, Pa.*, 137 F. Supp. 320 (E.D. Ark. 1955)).

Here, because we are conducting a *de novo* review, we examined the evidence that was before Prudential as well as the evidence provided in support of the Motions for Summary Judgment. Mr. Khan's evidence, including the photographs of his injury, establishes that his left thumb is still attached to his hand. (Colligan Certif. Exhibit E; Konecke Ex. C PRU 46-48.) In his May 8, 2007 report, Dr. Malik stated that Mr. Khan's left thumb was half a centimeter shorter than the right thumb due to amputation. (*Id.* at PRU 125-26.) Specifically, Mr. Khan's thumb sustained "amputation of the tip and loss of phalangeal bone and a large amount of soft tissue." (Konecke Certif. Ex. C PRU 126.)

Under the Optional Coverage, a "Loss" occurs where the insured suffers the "loss of thumb and index finger of the same hand by severance at or above the point at which they are attached to the hand." (Konecke Certif. Ex. B PRU 195.) A reasonable person would understand that to be entitled to benefits based on this clause, he would need to lose two whole digits up to at least the point where each digit joins the hand. Such a reasonable person would also understand that these digits would have to be the index finger and the thumb of the same hand. This understanding of this clause is in keeping with the ordinary definition of "severance" as the separation of one part of the body from another that was recognized by the *Martin* Court. 573 N.W.2d at 827. A reasonable person would also agree with the view taken by a majority of courts that "severance at or above" a specified point does not include a loss of usefulness or a partial severance. *See* 2 WILLIAM F. MEYER & FRANKLIN L. BEST, LIFE & HEALTH INSURANCE LAW § 16:2 (2d ed. 2009.) Accordingly, there is no ambiguity as to what "severance at or above the point

11

at which [the digits] are attached to the hand" means under the Optional Coverage. (Konecke Certif. Ex. B PRU 195.) This lack of ambiguity as to the meaning of "severance at or above" is consistent with the finding that "most courts have held that such language is unambiguous." AM. JUR. 2D *Insurance* § 1459. Thus, no reasonable jury could find that Mr. Khan has suffered a "Loss" as defined under the Optional Coverage because he has provided no evidence that his left thumb was severed at or above the point where it meets his hand.

Mr. Khan argues to no avail that the term "severance" is ambiguous because it could refer to substantial severance. (Pl. Reply 13.) There is a "minority rule . . . that allows for recovery of benefits when the insured demonstrates 'substantial severance.'" *Reid v. Life Ins. Co. of N. Am., Inc.*, 718 F.2d 677, 681 (4th Cir. 1983) (citing *King v. Metropolitan Life Ins. Co.*, 97 S.W.2d 651 (Tenn. App. 1936)). Under this rule, demonstrating "substantial severance," at or above a specified point, requires that a plaintiff establish that the appendage was disconnected, or nearly disconnected, from the body at or above the specified point. *See King*, 97 S.W.2d at 654. Here, as stated above, Mr. Khan has not adduced evidence that his left thumb was disconnected from his body at or above the hand. Further, he has not adduced evidence that his left thumb was nearly disconnected at that point. As such, even under the minority rule, no reasonable jury could find that Mr. Khan suffered a substantial severance of his left thumb.

Further, a "loss of thumb and index finger of the same hand by severance" cannot be interpreted as including a functional loss of those digits, as Mr. Khan contends. (Pl. Reply 13.) In support of his argument, Mr. Khan refers to the case of *Morgan v. Prudential Ins. Co. of Am.*, 545 P.2d 1193, 1196 (Wash. 1976) (citing *Moore v. Aetna*

*Life Ins. Co.*, 75 Or. 47, 53 (1915)). There, even though the insurance contract required severance to occur "at or above the wrist," the Supreme Court of Washington allowed a plaintiff who still had both hands to recover by reasoning that the severance of some fingers and thumbs rendered the hands themselves useless. 545 P.2d at 1196. However, as stated above, under Delaware law a court must apply the plain meaning of the words in the insurance contract unless a reasonable person would find them to be ambiguous. *New Castle County*, 933 F.2d at 1183; *Rhone-Poulenc*, 616 A.2d at 1196. As we are applying Delaware law, we are not free to apply a purposive interpretation to the insurance contract, as was done by the Supreme Court of Washington. 545 P.2d at 1196. Again, under Delaware law, Mr. Khan would be entitled to benefits under the Optional Coverage if he lost two digits, the thumb and the index finger, from his hand up to at least the point where each digit meets the hand.

Mr. Khan also argues to no avail that the absence of "total and permanent" in front of the words "loss of thumb and index finger of the same hand by severance" renders the meaning of "severance" ambiguous. (*See* Pl. Br. 12; Konecke Certif. Ex. B PRU 195.) Mr. Khan refers to the fact that under the Optional Coverage loss of sight, speech, or hearing must be "total and permanent" to be considered a "Loss" but that severance of body parts (*i.e.* hand, foot, thumb and index finger) is not qualified by the phrase "total and permanent." (*Id.*) However, there are other conditions, such as "loss of life" and "loss due to Coma" that can constitute a "Loss" that are also not qualified by "total and permanent." (Konecke Certif. Ex. B PRU 195.) With regard to "total" the reason for this seems clear: while loss of sight, speech, or hearing can occur incrementally, loss of life, loss due to Coma, and loss by severance are always total. That

13

is, a person is either alive or not, she is in a coma or not, and her limbs are either severed or not. As such, there is no need to include the word "total" in defining these conditions. Even if we were to find that "severance" need not be "permanent" to be compensable, no reasonable jury could find in favor of Mr. Khan because he has not adduced any evidence that his thumb was temporarily disconnected at the hand.

## IV.   Conclusion

For the above reasons, Prudential's Motion for Summary Judgment is granted, and Mr. Khan's Motion for Summary Judgment is denied. The case is closed. An appropriate Order follows.

                                                            **S/Susan D. Wigenton, U.S.D.J.**

Orig:   Clerk
Cc:     Esther Salas, U.S.M.J.
        Parties